# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**
July 28, 2010

Lyle W. Cayce
Clerk

No. 09-30550

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHRIS LAMONT MCCANN,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

On March 17, 2009, a jury found defendant-appellant, Chris Lamont McCann, guilty of having been a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He was sentenced to 100 months' imprisonment on June 17, 2009. He appeals his conviction and his sentence, arguing that the district court erred by refusing to grant a mistrial based on certain statements made by the prosecutors during closing arguments, by admitting prejudicial evidence, and by enhancing his sentence without consulting documents it was required to consult

under *Shepard v. United States*, 125 S.Ct. 1254 (2005). For the following reasons, we affirm McCann's conviction but vacate his sentence and remand for resentencing.

## FACTS AND PROCEEDINGS BELOW

On the night of June 30, 2008, New Orleans Police Department (NOPD) Officers Daniel Hunter, Evan Cox, and Troy Black were patrolling a high-crime area of the city when they encountered McCann, McCoy Walker, and Stephon McGee, Jr. At trial, McCann and the Government disagreed over the details of this encounter.

The officers testified that they spotted McCann, Walker, and McGee underneath a streetlight outside Taylor Park, standing at the rear of a vehicle with an open trunk, talking. Officer Cox saw a handgun in Walker's waistband and alerted the other two officers. Officer Hunter responded by lighting up the trio with the patrol car's spotlight. Startled by the light, Walker pulled the gun out of his waistband and bolted for the park. Officer Cox jumped out of the moving patrol car and chased him. After the patrol car came to a stop, McGee removed a gun from his pocket and also ran into the park. Officer Black chased after him. Inside the park, both Walker and McGee threw their guns into a swimming pool and surrendered.

Meanwhile, Officer Hunter had been left alone with McCann. Officer Hunter testified that McCann reached behind his back. Officer Hunter drew his weapon and ordered McCann to show his hands. McCann then tossed a handgun he had drawn from the back of his waistband into the open trunk of the vehicle, closed the trunk, and put his hands up. After all three suspects had been handcuffed, the officers opened the trunk, which they testified still had the keys in its keyhole, and discovered a loaded Glock 17 pistol inside. Officer Black then jumped into the pool and recovered the other two guns.

McCann called two eye-witnesses at trial, who told a different story. One was McGee, who pleaded guilty to being a felon in possession of a firearm before McCann's trial took place. The other was Mitchell Phillips, a man who lived in the neighborhood and who testified that he had been in the park on the night of the arrests watching some of the neighborhood youths play basketball. Neither McCann nor Walker testified.

McGee testified that he, Walker, and McCann had been inside the park talking to some other people when the police arrived, not outside it standing around a car, as the officers had testified. He said that when the officers walked up, several people ran away, and he and Walker immediately threw their guns into the park pool. He stated that he had not run from the police, because he was already close enough to the pool to toss his gun into it. He testified that McCann did not have a gun on him that night and that the gun McCann was charged with possessing had not appeared until the trio arrived at the police station. His testimony strongly implied that the police had framed McCann.[1]

Phillips corroborated some portions of McGee's testimony. He testified that he had come to the park about two hours before the arrests to watch the neighborhood youths play basketball. He said that nobody had been outside the park when the officers arrived. According to him, the officers entered the park, and several people started running. He said that two officers chased some of the people who were running, while one officer remained behind and immediately arrested McCann, who had not been running.

It is not contested that McCann became extremely angry after he was

---

[1]However, McGee's testimony was seriously impeached by the prosecution, which demonstrated that his statements at McCann's trial were irreconcilable with the factual basis he had signed as part of his guilty plea. McCann claimed he had not read the factual basis, even though he had stated under oath that he agreed with its content, at his plea.

arrested. At the police station, he kicked chairs and yelled at Officer Hunter, the only person who claimed to have seen him in possession of a firearm, that he couldn't wait for the charges against him to be dropped and that "[m]otherfucker, I hope you have a big vest under that shirt because that's your ass." Officer Hunter interpreted this statement as meaning that McCann was threatening to shoot him.

McCann was indicted on August 7, 2008, for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1)[2] and 924(a)(2).[3] He pleaded not guilty and was tried before a jury on March 16 and 17, 2009. At trial, the defense's theory of the case was that the police had framed McCann.

In his cross-examinations of the officers, McCann's counsel repeatedly and clearly implied the officers were lying. On redirect, one of the prosecutors asked

---

[2] 18 U.S.C. § 922 provides, in relevant part:

**"§ 922.  Unlawful Acts**
 * * *
   **(g)**  It shall be unlawful for any person—
       **(1)**  who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
        * * *
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."
18 U.S.C.A. § 922(g)(1) (West 2000) (emphasis in original).

[3] 18 U.S.C. § 924 provides, in relevant part:

**"§ 924.  Penalties**
   **(a)** . . .
    * * *
   **(2)** Whoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."
18 U.S.C.A. § 924(a)(2) (West 2000 & Supp. 2010) (emphasis in original).

Officer Cox if he and the other officers had framed McCann or given false testimony:

> "Q: Did you ever get together to try to concoct a false story or lie so that you could put the blame on these individuals falsely?
> A: No, sir.
> Q: Would you ever do that?
> A: No, sir.
> Q: Why not?
> A: I wouldn't — wouldn't risk my job for that.  It's — we — the amount of good police work you can do outweighs doing bad, wrong. I mean, why would you do that when there's actual people doing bad things.
> Q: And what would you face, according to police officer regulations and the law to the best of your knowledge, if you and your fellow officers falsely created evidence, falsely planted evidence, lied in court to falsely implicate individuals with crimes that they did not commit; what consequences would you face?
> * * *
> THE WITNESS: You could lose your job and be charged with federal crimes of, I would imagine, perjury and civil rights violations."

McCann objected to this line of questioning, but the district court overruled the objection.

During the trial, the district court allowed Officer Hunter to testify about the threat McCann had made after he was arrested.  McCann had objected to this evidence *in limine*, but the court had decided to allow it.  The district court also admitted a photograph of Phillips over McCann's objection that had identification details written under it that made it resemble a mug shot or a wanted poster.

During closing arguments, one of the prosecutors made several comments in response to the defense counsel's theory of the case that drew objections and motions for mistrial from the defense.  The first comment was made after one of the prosecutors listed reasons why the jurors should not credit the testimony of

the defense witnesses:

> "Ladies and gentlemen, they also effectively have said, These police officers are liars. This is a frame-up. Let me tell you something. You saw those men testify. For a police officer to stand before you and lie and put evidence on people that was not justifiably there, they would risk their life, their family, their future, their career, everything that they had worked for."

During the defense's closing arguments, McCann's counsel continued to advance the theory that he had been framed. McCann's counsel stated that the police officers "don't face any sanction here. If they lied there's nothing that will happen to them. This agency won't prosecute them nor will any other. Okay?" McCann's counsel also accused the prosecution of engaging in "theatrics":

> "Another part of the theatrics of the case. These officers that sat right here on the front row so that they want to say to you, Look at these officers, and, You have to support these officers. That's what undergirds or that's what underpins some of what the government's argument is. And what I'll suggest to you, that's inappropriate. The Judge will tell you that's inappropriate."

McCann's counsel continued to make similar arguments throughout his closing.

In rebuttal, one of the prosecutors responded by making the second comment to which McCann objected, moving for a mistrial:

> "On cross-examination yesterday, again of Officer Cox, I don't remember exactly what the question that [defense counsel] asked, but he apologized — excuse me. Mr. Cox said, I'm sorry. And [defense counsel] says, There's no need for an apology. I disagree. I think there is a need to apologize, to apologize to NOPD officers who wear bulletproof vests because they have to worry about getting shot at on the street and then they come in here in court and they get shot at again. They don't deserve that. They came in here and testified about what they did.
> These are guys who run into that (indicating) on a regular basis — by the way, I know these photos didn't show up very well on the screen. . . . These guys run into that (indicating) after guys with guns. And then because the defendant is caught red-handed, they

get call [*sic*] liars."

The district court overruled McCann's objections to both of the prosecutors' comments and denied his motions for mistrial.

The jury found McCann guilty on March 17, 2009. The district court sentenced him to 100 months' imprisonment on June 17, 2009. The district court applied the highest offense level under §2K2.1[4] of the November 2008 United States Sentencing Commission's *Guidelines Manual* (Sentencing Guidelines) after determining that McCann had been convicted of two felonies involving crimes of violence or controlled substance offenses. One of these convictions was a 1997 Louisiana conviction for manslaughter, to which McCann had pleaded guilty. However, in determining that this manslaughter had been a crime of violence, the district court relied entirely on McCann's Pre-Sentence Investigation Report (PSR). It did not consult the Louisiana manslaughter statute under which he had been convicted or any conclusive records made or used in adjudicating his guilt. McCann did not object to the court's failure to consult the statute or the conclusive records.

He timely filed his notice of appeal on June 25, 2009.

---

[4] The United States Sentencing Commission, *Guidelines Manual*, §2K2.1 (Nov. 2008), provides, in relevant part:

"**§2K2.1.   Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition**
    (a)   Base Offense Level (Apply the Greatest):
        (1)   **26**, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . . ."
USSG §2K2.1(a)(1) (emphasis in original).

**DISCUSSION**

McCann argues that the district court erred (1) by declining to grant a mistrial based on the prosecutors' statements in closing arguments, (2) by allowing the jury to hear evidence of the death threat he made after he was arrested, (3) by failing to redact the textual portion of the photographic exhibit depicting Phillips that made the document resemble a police record, and (4) by considering only the PSR in determining whether or not his prior manslaughter conviction was a crime of violence within the meaning of §2K2.1 of the Sentencing Guidelines. We discuss each issue in turn.

## I. Prosecutorial Misconduct

McCann argues that the district court erred by refusing to grant him a mistrial based on two comments made by the prosecutors that he asserts were improper. The first was made during the prosecution's closing argument:

> "Ladies and gentlemen, they also effectively have said, These police officers are liars. This is a frame-up. Let me tell you something. You saw those men testify. For a police officer to stand before you and lie and put evidence on people that was not justifiably there, they would risk their life, their family, their future, their career, everything that they had worked for."

For convenience, we will refer to this comment as the "Closing Comment." The second comment McCann cites as grounds for a mistrial was made during the prosecution's rebuttal:

> "On cross-examination yesterday, again of Officer Cox, I don't remember exactly what the question that [defense counsel] asked, but he apologized — excuse me. Mr. Cox said, I'm sorry. And [defense counsel] says, There's no need for an apology. I disagree. I think there is a need to apologize, to apologize to NOPD officers who wear bulletproof vests because they have to worry about getting shot at on the street and then they come in here in court and they get shot at again. They don't deserve that. They came in here and testified about what they did.

These are guys who run into that (indicating) on a regular basis — by the way, I know these photos didn't show up very well on the screen. . . . These guys run into that (indicating) after guys with guns. And then because the defendant is caught red-handed, they get call [*sic*] liars."

For convenience, we will refer to this comment as the "Rebuttal Comment." McCann argues that the Closing and Rebuttal Comments impermissibly bolstered the credibility of the officers and that the district court reversibly erred by refusing to grant him a mistrial.

## A. Standard of Review

McCann argues that we review the propriety of a prosecutor's closing arguments de novo. This is technically true, but it encompasses only half of the necessary analysis. We review assertions of prosecutorial misconduct in two steps. *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999). "First, we . . . initially decide whether or not the prosecutor made an improper remark." *Id*. Second, "[i]f an improper remark was made, we must then evaluate whether the remark affected the substantial rights of the defendant." *Id*. While McCann is correct that we review the propriety of the prosecution's arguments de novo, we review the question of whether or not the defendant's substantial rights were affected under the abuse of discretion standard. *See United States v. Munoz*, 150 F.3d 401, 414–15 (5th Cir. 1998) ("We initially decide whether or not the prosecutor made an improper remark. . . . If we find that the prosecutor made an inappropriate comment, then we consider whether or not it prejudiced the defendant's substantive rights. . . . The trial judge's . . . assessment of the prejudicial effect, if any, carries considerable weight."); *United States v. Rocha*, 916 F.2d 219, 234 (5th Cir. 1990) ("[T]he district court is in the best position to decide whether it is necessary to grant a mistrial on the basis of alleged prosecutorial misconduct. Absent an abuse of discretion, the

district court's ruling will not be set aside on appeal."). A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence. *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009).

### B. Propriety Analysis

We begin our two-step analysis of McCann's assertion of prosecutorial misconduct by determining whether or not the Closing and Rebuttal Comments were proper. "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009). "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008).

The test for improper vouching for the credibility of a witness is "whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." *United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977) (quoting *McMillian v. United States*, 363 F.2d 165, 169 (5th Cir. 1966)). We have held that "it is impermissible *per se* for a prosecutor to offer personal assurances to the jury that government witnesses are telling the truth . . . or to tell the jury that law enforcement witnesses should be believed simply because they were doing their job . . . ." *Gracia*, 522 F.3d at 601. However, "[i]n determining whether a prosecutor's comment was improper, it is necessary to look at the comment in context." *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004). "The prosecutor may . . . present what amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense

counsel in order to remove any stigma cast upon him or his witnesses." *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. Unit A Feb. 1981).

McCann argues that the Closing and Rebuttal Comments were grounds for a mistrial, because they improperly bolstered the credibility of the arresting officers. The Government responds that both comments were an "invited response" to the accusations of framing and lying made by McCann's counsel. *See generally United States v. Young*, 105 S.Ct. 1038, 1045 (1985) ("[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.").

We hold that the Closing Comment was proper. In *United States v. Bermea*, we found that a prosecutor had not personally vouched for the credibility of a witness by asserting that government informants were fired if they were found to have lied to law enforcement officers, because the record showed that the prosecutor had merely repeated the testimony of a witness in making this assertion. 30 F.3d 1539, 1564–65 (5th Cir. 1994). Similarly, in this case, the factual contents of the Closing Comment were limited to evidence that was in the record. In response to McCann's counsel's repeated assertions that the officers were lying, the prosecutor had asked Officer Cox on redirect to describe the consequences he would face if he were found to have framed McCann. In the Closing Comment, the prosecutor merely repeated the contents of this testimony in the course of arguing that the defense counsel's accusations were without merit. Thus, the Closing Comment did not give the jury any reason to believe that the prosecutor was aware of facts not in evidence that convinced him that the police were telling the truth. The factual representations

11

he made were all in evidence. Therefore, we hold that the district court did not err in declining to grant a mistrial based on the Closing Comment.

However, the Rebuttal Comment was a largely emotional appeal to the jury to credit the arresting officers' testimony because they were police officers. As such, it was improper. *See Gracia*, 522 F.3d at 601 ("[I]t is impermissible *per se* for a prosecutor to . . . tell the jury that law enforcement witnesses should be believed simply because they were doing their job . . . ."). That McCann's counsel had accused the arresting officers of lying does not of itself entirely purge the prosecutor's challenged Rebuttal Comment of impropriety. The defense was entitled to challenge the credibility of the officers, just as it was entitled to challenge the credibility of any other witness (although not on the basis of matters not in evidence, as the defense did here). Accordingly, we hold that the Rebuttal Comment was improper.

## C. Substantial Rights Analysis

Because we hold that the Rebuttal Comment was improper, we must proceed to the second step of our prosecutorial misconduct analysis and determine whether or not it affected McCann's substantial rights. *See Gallardo-Trapero*, 185 F.3d at 320. Ordinarily, a defendant's substantial rights are affected only where the error in question "affected the outcome of the district court proceedings." *United States v. Marcus*, 130 S.Ct. 2159, 2164 (2010) (quotation omitted). In determining whether the outcome of the district court proceedings was affected by an improper statement, we assess "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Gallardo-Trapero*, 185 F.3d at 320 (quoting *Munoz*, 150 F.3d at 415).

"The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and

attempting to elucidate their intended effect." *Munoz*, 150 F.3d at 415 (quoting *United States v. Fields*, 72 F.3d 1200, 1207 (5th Cir. 1996)). "[T]he remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. . . . In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant." *Young*, 105 S.Ct. at 1044. "While prosecutorial vouching for government witnesses is never desirable, . . . to the extent the prosecutor's remarks are invited by similar remarks from the defense, we must 'not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo.'" *United States v. Ramirez-Velasquez*, 322 F.3d 868, 874 (5th Cir. 2003) (quoting *Young*, 105 S.Ct. at 1045).

It is possible "to purge the taint of a prosecutor's prejudicial comments with merely generic cautionary instructions." *Gracia*, 522 F.3d at 604. Such instructions are presumed to be followed unless there is an overwhelming probability that the jury will be unable to follow them. *Id.* However, "generalized instructions" to the jury to "[r]emember that any statements, objections or arguments made by the lawyers are not evidence" and to remember that "[w]hat the lawyers say is not binding" only moderately reduce the degree of prejudice of highly improper remarks. *See id.* (alterations in original).

Where there is a great deal of inculpatory evidence presented against a defendant, we often find that improper statements were harmless error. *See, e.g.*, *Young*, 105 S.Ct. at 1048 ("[T]he overwhelming evidence of respondent's intent to defraud . . . eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations . . . ."); *Ramirez-Velasquez*, 322 F.3d at 875 ("Further weighing against reversal of Ramirez's conviction is substantial evidence pointing to his guilt."); *Gallardo-Trapero*, 185 F.3d at 321

("[W]e find that the remark by the government during closing argument does not outweigh the strength of the multifaceted evidence and testimony presented during trial."); *Rocha*, 916 F.2d at 236 ("Considering the limiting instructions given and the strength of the evidence against the defendants, we find that the prosecutor's remarks did not infringe upon the substantial rights of any defendant."). However, the opposite is also true. Where there is relatively little inculpatory evidence other than the testimony of the witnesses whose credibility was bolstered, we are more likely to find that a defendant's substantial rights were prejudiced. *See Gracia*, 522 F.3d at 604–07.

McCann argues that *United States v. Gracia* controls this case. In *Gracia*, we found that the prosecution's improper bolstering of law enforcement witnesses' credibility had prejudiced the defendant's substantial rights where their testimony was the only inculpatory evidence presented at trial. *Id.* at 604–606. This prejudice was not cured by "the minor mitigating effect" of a generic cautionary instruction. *Id.* at 605. It was also not excused by the defense counsel's accusations that the police officers were misrepresenting the truth. *Id.* at 602–03. We found that the plain error standard was satisfied and reversed and remanded for a new trial. *Id.* at 604–607.

McCann is correct that his case shares some similarities with *Gracia*. In McCann's case, the only inculpatory evidence was the testimony of the law enforcement witnesses whose credibility the prosecution improperly bolstered in the Rebuttal Comment. As in *Gracia*, the only cautionary instruction given by the district court in McCann's case was a generic one. In addition to these similarities, the heightened standard of review in *Gracia*, which McCann does not face, suggests that less compelling facts would warrant reversal in his case.

14

However, we do not agree that McCann's case is controlled by *Gracia*, because the remarks made by the defense counsel in *Gracia* do not appear to have been improper, and we find that McCann's counsel made at least one improper remark that was prejudicial enough to counterbalance the Rebuttal Comment. In *Gracia*, the defense counsel argued several times in closing that the Government agents were incorrectly recalling the facts. *Id*. at 602–03 & n.17. This conduct was materially different from that of McCann's counsel, who not only accused the arresting officers of intentionally lying, but also told the jury that the Government would support their perjury by refusing to prosecute them. This argument had no support in the record. While it was permissible to challenge the officers' credibility, it was highly improper to tell the jury that the Government would not prosecute officers who had committed perjury and framed an innocent man. Moreover, contrary to McCann's counsel's argument, there was nothing "inappropriate" in the officers being present in the courtroom during closing arguments or to suggest that this was part of prosecutorial "theatrics." Therefore, we hold that McCann's counsel reached a level of impropriety that was not present in *Gracia* when he told the jury that the arresting officers "don't face any sanction here. If they lied there's nothing that will happen to them. This agency won't prosecute them nor will any other." Accordingly, the prosecutorial misconduct of the Rebuttal Comment must be balanced against a much heavier counterweight of improper defense conduct than was present in *Gracia*.

Although the only cautionary instruction given in McCann's case was a generic one, and although there was relatively little inculpatory evidence against McCann other than the testimony of the witnesses whose credibility was bolstered, we find that the context in which the Rebuttal Comment was made supports the district court's decision to proceed with the trial. Any effect that

the remark might have had on the outcome of the case was counterbalanced by the defense counsel's improper remarks. Therefore, we hold that McCann's substantial rights were not prejudiced and that the district court did not abuse its discretion by declining to grant a mistrial.

## II. Death Threat Testimony

McCann's second assignment of error is the district court's decision to admit testimony describing the death threat he shouted at Officer Hunter after his arrest. McCann argues that the admission of this testimony violated Rule 403[5] of the Federal Rules of Evidence.

### A. Standard of Review

We review the district court's decision to admit the testimony describing McCann's death threat for abuse of discretion. *See United States v. Clark*, 577 F.3d 273, 287 (5th Cir.), *cert. denied*, 130 S.Ct. 809 (2009) ("We review the district court's evidentiary rulings for abuse of discretion." (quoting *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir.), *cert. denied*, 130 S.Ct. 154 (2009))). However, even if we find that the district court abused its discretion, the harmless error doctrine applies. *Clark*, 577 F.3d at 287. Under the harmless error doctrine, an error is reversible only if it affected a party's substantial rights. *Id.*

### B. Analysis

McCann objected to the admission of the death threat testimony *in limine*. He argued that the evidence should be excluded under Rule 403 because its

---

[5] Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

16

probative value was substantially outweighed by its unfairly prejudicial effect. He makes the same argument on appeal.

The Government does not appear to contest that the comment might have created some danger of prejudice to McCann, but it does argue that any such danger was outweighed by the evidence's probative value. The Government argues that the threat had significant probative value because it was directed against the only witness who saw McCann in possession of a firearm, Officer Hunter. The Government contends that this makes the situation comparable to the one we analyzed in *United States v. Rocha*, where we held that a death threat is admissible to show the defendant's consciousness of guilt when it is made against a key witness for the prosecution. 916 F.2d at 241. The Government also contends that the language of the threat, which suggested that Officer Hunter would soon be in need of a bulletproof vest, strongly implied that McCann had access to firearms.[6]

McCann argues that the death threat had no probative value. He argues that it did not establish consciousness of guilt because "[a] person who is being framed is even more likely to be angry than a person who is legitimately arrested." He also argues that the threat implied that he "could obtain [a

---

[6]Additionally, the Government argues that the death threat was intrinsic to McCann's crime of being a felon in possession of a firearm. "[R]ule 403 should *generally* not be used to exclude intrinsic evidence . . . ." *United States v. Sudeen*, 434 F.3d 384, 389 (5th Cir. 2005) (emphasis in original). Evidence of another act is intrinsic to the charged crime when the evidence of the other act and the evidence of the crime charged are inextricably intertwined, when both acts are part of a single criminal episode, or when the other act was a necessary preliminary to the crime charged. *United States v. Stephens*, 571 F.3d 401, 410 (5th Cir. 2009). McCann's death threat occurred after he was under arrest and being held at the police station. Thus, it was not a necessary preliminary to the crime charged, and his criminal episode was over. The evidence of the crime charged and the evidence of the death threat are not inextricably intertwined. Although the arrest provoked the threat, the threat had nothing to do with the reason McCann was arrested. Therefore, we hold that the death threat was not intrinsic to McCann's charged offense.

17

firearm] at an unspecified time in the future," not that he had possessed one on the night of his arrest. Neither argument is convincing. That a statement can be interpreted in two different ways does not negate its probative value.

On the issue of unfair prejudice, McCann argues that this case is controlled by *United States v. Grimes*, 244 F.3d 375 (5th Cir. 2001). He asserts that *Grimes* stands for the proposition that "[t]he risk of unfair prejudice outweighs probative value when the disputed evidence involves conduct more serious than the charged offense." We do not agree that *Grimes* stands for this proposition.

In *Grimes*, the defendant was charged with possessing child pornography. *Id.* at 377. During his trial, in addition to introducing the pictures the defendant was charged with possessing, the prosecution introduced paper copies of two explicit stories that had been stored on his computer's hard drive, which described raping children in lurid, graphic detail. *Id.* at 379, 385. We found that the unfair prejudice inherent in introducing these "vile" stories into evidence outweighed their probative value. *Id.* at 385. The basis for our decision was not that possessing the stories was a more serious offense than possessing child pornography. *See id.* Possessing the stories was legal. *Id.* The basis for our decision was that the stories were extremely inflammatory. *Id.* The court even noted that the stories might be admissible in the defendant's new trial if the prosecution redacted the "gruesome violence." *Id.*

While *Grimes* does not support McCann's argument, he is correct that evidence that a defendant engaged in conduct more serious than the charged offense can create substantial unfair prejudice. *See United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006) ("We also conclude that [the] testimony had little opportunity of creating unfair prejudice because . . . the prior scheme was not a

18

more serious offense than the offense with which Adair was charged . . . .”). However, McCann's threat was not a more serious offense than being a felon in possession of a firearm. Under Louisiana law, threatening a public officer or a witness is punishable by not more than five years' imprisonment. *See* LA. REV. STAT. ANN. § 14:122 (2004). A felon in possession of a firearm can be sentenced to as much as ten years' imprisonment. *See* 18 U.S.C.A. § 924(a)(2) (West 2000).

Nevertheless, we agree that the evidence of the death threat created a moderate risk of unfair prejudice, even though this risk was not as great as it would have been if the threat had been a more serious crime than that charged. McCann was not charged with attempting to kill Officer Hunter. He was charged with possessing a firearm. The threat had the potential to distract the jury from the issue it was supposed to decide. But we also hold that the statement had material probative value. It suggested that McCann was conscious of his guilt and wanted to intimidate the principal witness against him. *See Rocha*, 916 F.2d at 241. On the balance, we cannot say that the district court abused its discretion by holding that the material probative value outweighed the risk of unfair prejudice. Therefore, we hold that the district court did not err by refusing to exclude the death threat evidence.

## III. Photographic Exhibit

During the trial, the prosecution called Officer Steven Gaudet to rebut the testimony of Phillips. Officer Guadet's testimony was offered to show that Phillips had not arrived in the park to watch the neighborhood youths play basketball as early as he had testified that he had, because Officer Gaudet had questioned him several blocks away in connection with a drug investigation about an hour before McCann's arrest. During Officer Gaudet's direct examination, the Government introduced a photograph of Phillips (who was no longer in the courtroom) into evidence for Officer Gaudet to use in identifying

19

him. The photograph was printed on a sheet of paper above a written list of identification details arguably like what one might think are typically found in police records. The writing on the photograph also included the words "Profile on Mitchell Phillips Source: Orleans CSO, LA."[7]

McCann objected to the admission of the written information, requesting that the text be redacted from the photograph to allow Officer Gaudet to identify Phillips without the danger of unfairly prejudicing the defense by implying that Phillips had been arrested or was otherwise known to the police. The district court overruled the objection, and McCann argues on appeal that this was reversible error.

## A. Standard of Review

We review a district court's evidentiary rulings for abuse of discretion. *Clark*, 577 F.3d at 287. If we find that an abuse of discretion occurred, we apply the harmless error doctrine. *Id.* Thus, the district court's decision to admit the photograph without redacting the text is only reversible if it affected McCann's substantial rights. *Id.*

## B. Analysis

Although he did not cite it by number, the basis for McCann's objection to the text below the photograph appears to have been Rule 403. On appeal, he argues that the text's probative value was heavily outweighed by the danger that it would have an unfairly prejudicial effect. He cites several of our opinions that hold that there is a great risk of unfair prejudice from evidence that suggests to the jury that uncharged criminal conduct occurred. *United States v. Aragon*, 962 F.2d 439, 442 (5th Cir. 1992); *United States v. Beechum*, 582 F.2d 898, 909–14 (5th Cir. 1978) (en banc). However, these opinions all dealt with instances in

---

[7] We are told that "CSO" stands for "Criminal Sheriff's Office."

which the defendant had committed the uncharged criminal conduct at issue. Phillips was merely a defense witness, not the defendant.

The Government contends that the unfair prejudice that could have been caused by the text was minimal. It notes that the district court stated it saw nothing wrong with the biographical information. It argues that the probative value of the text was its confirmation that Phillips was the subject of the photograph, which prevented McCann from arguing that a different individual was depicted. The Government also notes that the defense clarified through its cross-examination of Officer Gaudet that he had not arrested Phillips that night. The Government argues that the exhibit could not have adversely affected McCann's substantial rights because, after it was introduced, the Government never referred to it again. It also argues that any unfair prejudice would have been removed by the district court's generic limiting instructions regarding witness testimony.

We have reviewed the exhibit. The effect of the text is to make an otherwise unremarkable photograph arguably resemble a mug shot or a wanted poster. Without the text redacted, the exhibit may have implied that Phillips was some kind of criminal. We also note that the probative value of the text was relatively minor.[8]

However, we need not decide whether the district court abused its discretion in admitting the exhibit, because we find that McCann cannot establish that the district court's refusal to redact the text affected his

_____

[8]While we note that it may have been unlikely that defense counsel, aware of the existence of the written material in the original document, would have raised the identification issue in cross-examination of Gaudet, counsel may well have raised it in some oblique way in final argument after the evidence closed. The defense never offered to stipulate that the person Gaudet testified he detained was the same Phillips who had testified earlier in the case.

substantial rights. Neither side referred to the exhibit again after it was admitted. Neither side ever informed the jury or the district court that "CSO" stood for "Criminal Sheriff's Office."[9] Indeed, Officer Gaudet's entire testimony appears to have been little more than a tangential aside in McCann's trial. We do not think that the outcome of McCann's case was affected by a minor exhibit that may have implied that one of his witnesses had a criminal history. Therefore, we hold that, even if the district court abused its discretion in admitting the text, any such error would have been harmless.

## IV. Sentencing Guidelines Enhancement

The district court found that McCann's offense level under §2K2.1(a)(1) of the Sentencing Guidelines was twenty-six, because it found that he had "at least two felony convictions of either a crime of violence or a controlled substance offense." USSG §2K2.1(a)(1). One of the two felony convictions cited by the district court was a Louisiana conviction for manslaughter. In concluding that this conviction was for a crime of violence, the district court relied only on the PSR and did not consult the Louisiana statute. McCann argues on appeal that this was error and that his sentence must be vacated and remanded.

### A. Standard of Review

McCann did not object to the district court's exclusive reliance on the PSR at sentencing. Accordingly, he and the Government agree that his sentence should be reviewed for plain error. *See United States v. Ochoa-Cruz*, 442 F.3d 865, 866 (5th Cir. 2006) (per curiam).

Plain error exists where (1) there was an error, (2) it was clear or obvious, and (3) it affected the defendant's substantial rights. *Id.* Even if these three

---

[9]The district court stated that it saw nothing prejudicial about the picture, noting that it "doesn't say anything except describes him."

conditions are met, we may only exercise our discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 867.

## B. Analysis

Some Sentencing Guidelines provisions, like those found in §2K2.1(a), create incremental offense levels that are triggered by prior convictions. *See* USSG §2K2.1(a). Under these types of guidelines, the higher offense levels can be applied only where the prior convictions meet certain stated requirements, like being for "crimes of violence" or "drug trafficking offenses." *See id*. When analyzing a prior conviction to determine whether it meets the requirements needed to trigger a particular offense level, the district court must confine its examination to the elements of the statute under which the prior conviction was obtained. *Ochoa-Cruz*, 442 F.3d at 867 (citing *Shepard*, 125 S.Ct. at 1257; *Taylor v. United States*, 110 S.Ct. 2143, 2160 (1990)). This practice of confining the sentencing court's analysis to the statutory elements of the defendant's prior conviction is known as the "categorical approach." *Shepard*, 125 S.Ct. at 1258.

A limited exception to the categorical approach allows sentencing courts to look further than the statutory elements of the prior conviction where the prior conviction was obtained under a statute that criminalizes a broader range of conduct than the conduct to which a given offense level applies. *Id*. Under this exception, a district court may apply the offense level only in the "narrow range of cases" where it can be shown, based on "conclusive records made or used in adjudicating guilt," that the facts of the defendant's particular crime satisfied every requirement of the assigned offense level. *Id*. at 1258–60. In *Shepard*, the Supreme Court held that, in cases where the prior conviction was obtained through a guilty plea, the conclusive records that allow a district court to

implement this exception to the categorical approach are limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 1263.

Due to *Shepard*, a district court may not apply a particular offense level based *solely* on the PSR's conclusory characterization of a prior conviction as having been for a "crime of violence." *Ochoa-Cruz*, 442 F.3d at 867. When a court thus relies on the PSR alone, it makes an error that is clear and obvious. *Id.* It is uncontested that the district court relied solely on McCann's PSR at his sentencing. Therefore, the district court plainly erred.

A "crime of violence" for the purposes of §2K2.1 is defined in §4B1.2(a). USSG §2K2.1, comment (n.1). According to §4B1.2(a):

> "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)   is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Louisiana's manslaughter statute criminalizes conduct that is broader than the range of conduct that satisfies §2K2.1(a)(1)'s "crime of violence" prerequisite. Under the Louisiana statute, "manslaughter" includes:

> "(2) A homicide committed, without any intent to cause death or great bodily harm.
>
> (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the

person; or
> (b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1."

LA. REV. STAT. ANN. § 14:31(A).

Thus, it is possible to be convicted of manslaughter in Louisiana if a death occurred during a non-violent offense like a theft. *See* LA. REV. STAT. ANN. § 14:67.10; *State v. Bowers*, 965 So.2d 959, 965–66 (La. Ct. App. 2007) (affirming a manslaughter conviction where the defendant attempted to drive away from a supermarket where she had just committed theft and hit an employee who was gathering shopping carts in the parking lot).

Because a defendant can be convicted under the Louisiana manslaughter statute for offenses that would not be crimes of violence under §2K2.1, at McCann's sentencing, the Government needed to show through the exception to the categorical approach that his manslaughter conviction was based on conduct that constituted a crime of violence. McCann pleaded guilty to the manslaughter offense, so the Government was limited to proving that it was a crime of violence by referring the district court to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 125 S.Ct. at 1263.

At oral argument, the Government admitted that all of the documents sanctioned by *Shepard* that could have conclusively demonstrated the specific facts of McCann's manslaughter offense were lost in Hurricane Katrina. Thus, if the district court had followed the correct procedure at his sentencing hearing, it would have been required to apply a lower offense level than §2K2.1(a)(1)'s,

and McCann would have received a much lower guideline sentencing range.[10] Accordingly, we find that the district court's error affected his substantial rights. We also hold that this is an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Therefore, we vacate McCann's sentence and remand for re-sentencing in accordance with this opinion.[11]

### CONCLUSION

For the foregoing reasons, we affirm McCann's conviction, but vacate his sentence and remand his case for a new sentencing hearing.

AFFIRMED in part, VACATED and REMANDED in part.

---

[10]As calculated by the district court, McCann's guideline range was 92 to 115 months. If his manslaughter conviction had not been counted as a crime of violence, the range would have fallen by four offense levels to 63 to 78 months.

[11] We also note that, if the Government recovers the lost documents needed to satisfy the requirements of *Shepard* after our remand, nothing in this opinion should be read to prevent their introduction at McCann's sentencing hearing.