# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2013

No. 12-60378

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JOHNNY WINTERS, JR.,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
No. 2:10-CR-153-1

Before STEWART, Chief Judge, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Johnny Winters, Jr., was convicted of conspiracy to distribute more than 500 grams of cocaine and more than 28 grams of cocaine base, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846, and possession of a firearm by a felon,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60378

violating 18 U.S.C. § 922(g)(1). He was sentenced to 121 months for the conspiracy and 120 months for the firearm possession, to be served concurrently. He appeals, and we affirm.

I.

About 1999, government agents began investigating a drug-trafficking ring run by Quincy Terry. Drug Enforcement Administration ("DEA") wiretaps revealed DiCarlos Henderson's role as a supplier to several individuals, including Winters. Officials reviewed intercepted calls and electronic communications between Winters and Henderson, who attempted to contact each other thirty-four times in early 2010. The communications included inquiries as to purchase, pricing, and the status of Henderson's supply.

In March 2010, officials arrested Terry and Henderson while they were cooking crack-cocaine. They were found in possession of 3,030.90 grams of powder cocaine, 547.91 grams of crack, and various drug paraphernalia, including scales, cooking supplies, and razor blades. Officials also seized a drug ledger containing names of previously indicted conspiracy members and corresponding information on past sales, including quantity, price, and payment dates. Agents attributed one entry to Winters, who went by the street name "Slugga": "Slug - 32,000 Pd Thur ~~24,000~~ owe 1,800." Henderson explained that entry to mean that Winters had purchased a kilogram of cocaine for $32,000, made an initial $24,000 payment, later paid the remaining balance for the kilogram, and carried a balance of $1,800 due to Henderson.[1] Henderson testified that he sold cocaine

---

[1] The government presented evidence that this conspiracy sold a kilogram of cocaine for $32,000 and an ounce for $900.

2

No. 12-60378

to Winters on three occasions: a kilogram of cocaine powder in December 2009 and two sales of four ounces in January 2010.

In June 2010, agents obtained a search warrant for the residence of Timothy Bankston, a suspected member of the conspiracy. When agents entered, they found Winters and his girlfriend, Lanekia Brown, who was renting the house from Bankston. Winters had spent the night there, and he and Brown were sleeping on the couch when the agents arrived. Immediately, the agents saw a pistol two inches from Winters's leg and partially shoved between the couch cushions. Agent Price, the lead investigator, asked Winters to move toward him, and Winters placed his hands in the air and left the couch. Brown later told the agents that the gun did not belong to her, nor did she keep guns in her house. Winters denied knowledge of the gun.

At a meeting later that day between Winters and Price, Winters admitted that he knew Terry, although he denied involvement with Terry's conspiracy. Winters acknowledged that he purchased cocaine from Terry approximately six times between 2005 and 2007 in amounts ranging from 2 to 4.5 ounces.[2] Winters stated that he purchased the cocaine in powder form and had someone else cook it into crack-cocaine. In addition, he admitted to selling about one ounce of crack per month between 2005 and 2007. Winters ended the meeting after refusing to give the agents permission to search his house and music studio.

Agents obtained a warrant to search the house for weapons. They discovered, in plain sight, a surveillance system, digital scales with residue, razor blades, zipper storage bags, measuring cups, baking soda, and marijuana debris

---

[2] Besides the cocaine sales, Winters admitted that Terry also supported his music business, loaning Winters $3,200.

No. 12-60378

but no drugs or weapons.

Winters was arrested about June 2010 and indicted in October. The Friday before trial, Price discovered web pages for Winters on the social networking websites Facebook and MySpace.[3] On Winters's Facebook page, Price found several pictures of Winters and a photograph of what appeared to be firearms stacked on hundreds of thousands of dollars. On Winters's MySpace page, along with pictures of Winters, there was a picture of wrapped packages that resembled many kilograms of cocaine packaged for sale. Winters's counsel was not aware of the photographs until the first day of trial—the day before the government intended to introduce them.[4] At trial, although neither of the parties was able conclusively to identify the photos, they were admitted.

## II.

We review evidentiary rulings for abuse of discretion. *United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010). We affirm if any error is harmless or did not substantially prejudice the rights of the defendant. *Id.* at 416–17. "In a harmless error examination, we view the error in relation to the entire proceeding, not merely in isolation. Reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008) (citations omitted).

---

[3] Social networking websites and personal blogs allow individuals to post and share stories, pictures, and other media files found elsewhere on the internet.

[4] The government explained that it had attempted to reach Winters's counsel the day before trial began.

No. 12-60378

## A.

Winters disputes the admission of the Facebook and MySpace photographs.[5] We find merit in Winters's argument that it was an abuse of discretion to admit them, because the government failed to lay a proper foundation and they were unfairly prejudicial.

Federal Rule of Evidence 901 requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[6] A photograph can be authenticated by someone other than the photographer "if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. Unit B Apr. 1981).

To satisfy the rule of authentication, the government relied on Price's testimony that he had found the photos on Winters's website and Winters's concession that the websites were his. That was insufficient. The government offered the photographs for more than their mere existence on Winters's web pages; it used them to suggest that Winters had possession and control of the pictured weapons, money, and drugs; it suggested that "large quantities of cash . . . [are] indicative of narcotics trafficking, [and are] relevant to the Government's assertion . . . that he is part of a drug trafficking conspiracy[.]"

---

[5] Winters also appeals the admission of pictures from the same websites that show him posing for rap music posters. Winters's counsel, however, waived any claims about those photographs: At trial he specifically stated that he "wouldn't oppose [photographs picturing Winters] at all." *See United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002) (describing waiver).

[6] *See also United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir. 2011) (holding that proof does not need to be conclusive, and any flaws go to the weight of the evidence rather than admissibility); *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) (holding that testimony of a knowledgeable person is sufficient).

No. 12-60378

A photograph's appearance on a personal webpage does not by itself establish that the owner of the page possessed or controlled the items pictured. Because Price was not able to recognize and identify the objects in the photos or show that Winters, let alone any member of the Terry conspiracy, had possession or control of the pictured items, a proper foundation was not laid.

Nor can we ignore the failure of the court to exercise its discretion under Federal Rule of Evidence 403 to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury[.]" We recognize that "we must afford an especially high level of deference to district courts in such circumstances." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007). Despite this high bar, the district court erred. Because the content depicted in the photographs cannot be tied to Winters or the Terry conspiracy, the photos have little probative value as to Winters's involvement in the conspiracy. Even more significantly, the pictures, depicting overwhelming amounts of cash, several weapons with silencers, and substantial amounts of cocaine packaged for distribution, are highly prejudicial.

Although the photographs were erroneously admitted, we must affirm "unless the ruling affected substantial rights of the complaining party." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003); FED. R. CRIM. P. 52(a). The error is harmless if, after considering the whole record, we can say that there is no "reasonable possibility that the improperly admitted evidence contributed to the conviction." *United States v. Demmitt*, 706 F.3d 665, 673 (5th Cir. 2013) (internal citation and quotation omitted).

We examine each of the convictions separately for harmlessness. Any error did not affect the verdict as to the charge of felon in possession of a firearm.

6

No. 12-60378

Even the photograph of weapons had no reasonable possibility of contributing to the verdict, because the specific gun underlying the conviction was found next to Winters, so the evidence of his guilt on that count was overwhelming, "and the error would not have substantially influenced the jury's verdict[.]" *Hawley*, 516 F.3d at 268.

On the conspiracy conviction, though the admission of the photos was error, independent evidence of Winters's involvement in the conspiracy was so overwhelming that the error was harmless. *See United States v. Setser*, 568 F.3d 482, 495 (5th Cir. 2009). Winters admitted to buying cocaine from Terry multiple times between 2005 and 2007. He confessed that he had someone cook it into crack and sold about an ounce per month during that period. Henderson testified that he sold Winters cocaine three times between 2009 and 2010, including a sale of one kilogram. The drug ledger corroborated Winters's purchases, suggesting that he had paid several thousand dollars to the conspiracy and also carried an outstanding balance. Phone records demonstrated that Winters continued to contact Henderson about purchasing additional cocaine in early 2010. In addition, when agents searched Winters's house, they found a four-camera surveillance system, digital scales with residue, and razor blades.

Winters does not dispute that he bought cocaine from Terry and Henderson, but he contends he had no intent to join their conspiracy. Although a conspiracy conviction requires more than a mere buyer-seller relationship, *United States v. Posada-Rios*, 158 F.3d 832, 860 (5th Cir. 1998), "[t]he rule shields mere acquirers and street-level users" from conspiracy penalties.[7] Considering Win

---

[7] *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir.), *cert. denied*, 133 S. Ct. 673 (2012) (quoting *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir.) (en banc), *cert. denied*, (continued...)

No. 12-60378

ters's admitted sales between 2005 and 2007, his purchase of a kilogram of cocaine, and his prolonged cooperation with Henderson and Terry, this was not a "single buy-sell agreement." *Delgado*, 672 F.3d at 333.

Similarly, although mere association with conspiracy members is insufficient, *United States v. Robertson*, 110 F.3d 1113, 1119 (5th Cir. 1997), "[t]he jury can 'infer the existence of a conspiracy from the presence, association, and concerted action of the defendant with others.'"[8]  Furthermore, the drug ledger is significant: "Receiving fronted money in a drug deal is 'strong evidence of membership in a conspiracy because it indicates a strong level of trust and an ongoing, mutually dependent relationship.'"  *Delgado*, 672 F.3d at 334 (quoting *Posada-Rios*, 158 F.3d at 860) (internal quotations omitted).  Considering the entire proceeding, there was overwhelming evidence of Winters's guilt on the charges of conspiracy to distribute; thus, any error "would not have substantially influenced the jury's verdict," and the admission of the photographs was harmless.[9]  *United States v. Williams*, 957 F.2d 1238, 1244 (5th Cir. 1992).

B.

Winters maintains that the district court erred in admitting photographs and physical items from Henderson and Terry's arrest.  Winters avers, without citing evidence rules or caselaw, that the government failed to tie him to the

---

[7] (...continued)
133 S. Ct. 525 (2012)).

[8] *Id.* (quoting *United States v. Curtis*, 635 F.3d 704, 719 (5th Cir. 2011)).

[9] Because the admission of the evidence was harmless as to the convictions on both counts, we decline to address Winters's additional claims of error under Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 404(b).

No. 12-60378

Henderson-Terry drug bust, and it was thus prejudicial to admit that evidence.[10] The court did not abuse its discretion.

The evidence from the arrest was relevant under Federal Rule of Evidence 401's broad test of "any tendency to make a fact more or less probable than it would be without the evidence," making it admissible under Rule 402. Because Winters faced charges of conspiracy, he could be liable for the acts of his co-conspirators in furtherance of the conspiracy. *United States v. Payne*, 99 F.3d 1273, 1278 (5th Cir. 1996). The drugs, paraphernalia, and drug ledger make it more likely that Winters was communicating with conspiracy members for purposes of distributing narcotics. Nor was there any error under Rule 403. The court did not abuse its discretion in finding the probative value not substantially outweighed by unfair prejudice.

## III.

Winters disputes the sufficiency of the evidence on both counts.[11] This

---

[10] As part of Winters's argument against the admission of this evidence, he claims additional prejudice resulting from a statement by the government, during closing argument, that referred to Winters as the one arrested while cooking crack-cocaine. The prosecutor appears to have mis-spoken, because he refers several other times during his closing to arresting Terry and Henderson in the process of cooking. Even assuming the mis-statement was improper, Winters failed to object at trial, so we review for plain error. *See United States v. Robinson*, 286 F. App'x 216, 222 (5th Cir. 2008) (per curiam) (reviewing prosecutor's mis-statement for plain error where party failed to object). This slip of the tongue did not affect Winters's substantial rights, because "[a]ny prejudice from this statement is undercut by the prosecutor's contradictory statement[s]" immediately before, referencing that Henderson and Terry were the ones caught cooking the crack. *Id.*

[11] The elements of a 18 U.S.C. § 922(g) violation include finding "beyond a reasonable doubt (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005). The elements of conspiracy to distribute are that
(continued...)

9

No. 12-60378

court reviews sufficiency of the evidence under a highly deferential standard of review, *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002), determining not whether the outcome was correct but merely whether the verdict was reasonable. *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). Because we already decided that the evidence, apart from the disputed photographs, was overwhelming, we incorporate that analysis and conclude that "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord United States v. Vargas-Ocampo*, 711 F.3d 508, 511 (5th Cir. 2013) (citing *Jackson*, 443 U.S. at 319).

## IV.

Winters contends that his trial counsel's performance was constitutionally deficient based on alleged failures (1) to make a reasonable effort to determine the source of the Facebook and MySpace pictures; (2) to continue to object to the evidence seized at Terry and Henderson's arrest; and (3) to object when the government mis-spoke during closing argument.[12] To succeed on an ineffective-assistance-of-counsel ("IAC") claim, a defendant must satisfy both prongs of a two-part test: that performance was deficient, whereby "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and that the defendant was prejudiced, *i.e.*,

---

[11] (...continued)
(1) there was an agreement between two or more people to possess contraband with the intent to distribute and (2) that Winters knew of, (3) intended to join, and (4) voluntarily participated in the conspiracy. *United States v. Robertson*, 110 F.3d 1113, 1118–19 (5th Cir. 1997).

[12] The prosecution misstated that Winters was caught cooking crack-cocaine.

"that counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." All of Winters's claims fail on the first prong.

"To determine whether counsel's performance was deficient, we must measure it against an objective standard of reasonable performance based on accepted professional norms." *Sonnier v. Quarterman*, 476 F.3d 349, 357 (5th Cir. 2007). In failing to determine the origin of the photograph, counsel did not violate professional norms and thus did not perform deficiently. Although an advocate has "a duty to make reasonable investigations . . .[,] a particular deci-sion not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Washington*, 466 U.S. at 691). Counsel's course of action was reasonable, considering that he did not receive the photos until the first day of trial.

Nor was counsel deficient in his objection to the introduction of the evi-dence from the Henderson and Terry arrest. Despite Winters's claim on appeal, counsel actively participated and fought the government's attempt to enter the evidence. Furthermore, the court, after hearing arguments, correctly deter-mined that the drugs from the arrest were relevant and admissible; "trial coun-sel did not render deficient performance by failing to make a futile objection."[13]

Because of *Washington*'s "high bar," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011), we also decline to second-guess Winters's attorney's decision not to object to the prosecutor's mis-statement at closing argument. Whether to raise

---

[13] *Henderson v. Cockrell*, 333 F.3d 592, 602 (5th Cir. 2003); *see also Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008) ("In order to show that counsel was deficient for failing to object under the first prong of [*Washington*], the objection must have merit.").

No. 12-60378

objections during closing argument is a strategic decision. *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970). For example, because "an objection may tend to emphasize a particular remark to an otherwise oblivious jury, the effect of objection may be more prejudicial than the original remarks of opposing counsel." *Id.*

V.

Winters urges that the government's continued reference to the Terry conspiracy as "this case" was unfairly prejudicial at trial. The government acknowledges that Winters was charged in a separate indictment, but it contends that because Winters was allegedly part of the same conspiracy as was Terry, the reference is not factually incorrect.

Allegations of prosecutorial misconduct are reviewed by deciding first whether an improper remark was made and then whether it affected substantial rights. *United States v. McCann*, 613 F.3d 486, 494 (5th Cir. 2010). "[W]e review the propriety of the prosecution's arguments de novo, [and] we review the question of whether or not the defendant's substantial rights were affected under the abuse of discretion standard." *Id.* Whether a statement was improper is considered in light of the entire case.[14] Even an improper comment, "standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."[15] On the second step, whether the

---

[14] *United States v. Morrow*, 177 F.3d 272, 300 (5th Cir. 1999) (per curiam); *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1179 (5th Cir. 1993).

[15] *United States v. Guidry*, 456 F.3d 493, 505 (5th Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

12

No. 12-60378

remarks affected substantial rights, this court considers "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt."[16]

Even assuming *arguendo* that the prosecution's characterization was improper, Winters's substantial rights were not affected. First, the court's proper and undisputed instructions on the required elements of conspiracy, including that the jury must find Winters's intent and voluntary participation, served to reduce any risk that the jury might find Winters guilty based on the actions of others.[17] Second, as we have already repeatedly noted, the government presented a strong case with evidence specifically relating to Winters's role in the conspiracy. *See id.* at 497. Finally, the magnitude of any unfair prejudice resulting from jury confusion does not outweigh the other factors. *See Gallardo-Trapero*, 185 F.3d at 320–21.

## VI.

The presentence report ("PSR") calculated the amount of cocaine attributable to Winters, concluding that he should be assigned a base offense level of 28 for a conspiracy involving at least two but not more than 3.5 kilograms, plus an increase of one for the offense of felon in possession of a firearm, resulting in a base offense level of 29. *See* U.S.S.G. § 2D1.1(a)(5), (c)(6). The PSR suggested

---

[16] *United States v. Munoz*, 150 F.3d 401, 415 (5th Cir. 1998) (quoting *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995)).

[17] *See United States v. Garcia*, 522 F.3d 597, 604 (5th Cir. 2008); *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999); *see also McCann*, 613 F.3d at 497 (noting that we presume jurors follow instructions "unless there is an overwhelming probability that the jury will be unable" to do so).

No. 12-60378

a criminal history level of IV, yielding a guideline range of 121–151 months. Winters received a sentence of 121 months.[18]

At the sentencing hearing and in the filed objections to the PSR, Winters objected to the base offense level, arguing that the government "greatly, grossly overstated the amount of drugs for which Mr. Winters should be assessed." Winters's counsel based this objection on the assertions that Henderson's testimony was not credible, the PSR relied on merely speculative evidence, and the jury made no findings as to specific amounts.  On appeal, Winters shifts his argument to dispute the specific weights and the calculations.  As for the 2009 and 2010 transactions, Winters contends that Henderson testified to sales of four ounces, rather than 4.5 ounces as discussed at sentencing.  In addition, Winters takes issue with the PSR's calculation of seven, rather than six, sales between 2005 and 2007.

Although we review underlying factual findings in sentencing for clear error, *United States v. Snell*, 152 F.3d 345, 346 (5th Cir. 1998), we "normally will not correct a legal error made in criminal trial court proceedings unless the defendant first brought the error to the trial court's attention," *Henderson v. United States*, 133 S. Ct. 1121, 1124 (2013).  This rule exists to encourage parties to raise their objections in the trial court, which is "in the best position to determine the relevant facts and adjudicate the dispute." *Puckett v. United States*, 556 U.S. 129, 134 (2009).  Because Winters failed to raise his objections—to the use of 4.5 ounces instead of four, and seven versus six sales—so that the trial court would be alerted to the potential error, we must review for plain error.  To

---

[18] Winters was also sentenced to 120 months, to run concurrently, for the conviction of felon in possession of a firearm.  He does not appeal that sentence.

14

find reversible error under this difficult standard of review, there must be an error, which is clear or obvious, and that affects the defendant's substantial rights. *Id.* at 135. "Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

We can assume that there were errors that were plain in the calculation of cocaine attributable to Winters; the government concedes as much on appeal. We turn then to the third prong, or whether the error affected the outcome of the trial. *United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) (en banc). In light of the amount of cocaine Winters purchased, the parties agree that the total offense level should have been 27 instead of 29, resulting in a corrected guideline range of 100–125 months. Though Winters was sentenced at the bottom of the incorrect range, he is subject to an enhanced penalty for a prior felony drug conviction with a statutory minimum of 120 months. 21 U.S.C. § 841(b)(1)(B). The correct range would thus be 120–125 months instead of 121–151 months. Winters's 121-month sentence is within the correct guideline range and only one month more than the lowest possible sentence under the statutory scheme. Under plain-error review, "where the resulting sentence falls within both the correct and incorrect guidelines, we do not assume, in the absence of additional evidence, that the sentence affects a defendant's substantial rights." *United States v. Blocker*, 612 F.3d 413, 416 (5th Cir. 2010).

The judgments of conviction and sentence are AFFIRMED.